

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-20-00084-CV

---

**IN RE: THE COMMITMENT OF PAUL ANTHONY FANT-CAUGHMAN**

On Appeal from the 47th District Court
Randall County, Texas
Trial Court No. 75,831-A, Honorable Dan L. Schaap, Presiding

July 14, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

The State of Texas filed a petition to commit Paul Anthony Fant-Caughman as a sexually violent predator.[1]  After a trial, the jury returned a verdict finding that Fant-Caughman is a sexually violent predator, and the trial court entered a final judgment and an order of civil commitment.  We will affirm.

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001-.153 (West 2017 & West Supp. 2020).

## Background

In 1994, Fant-Caughman was convicted of committing a lewd act upon a child in Orange County, California. In 2002, he was convicted of aggravated sexual assault and indecency with a child in Randall County, Texas. All three offenses are sexually violent offenses as defined by section 841.002(8)(A) of the Texas Health and Safety Code.[2] *See* TEX. HEALTH & SAFETY CODE ANN. § 841.002(8)(A) (West 2017).

In April of 2019, the State of Texas filed a petition alleging Fant-Caughman is subject to civil commitment as a sexually violent predator. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.041(a) (West 2017). Fant-Caughman denied the petition's allegation. The matter was tried before a Randall County jury, which returned a unanimous verdict finding Fant-Caughman to be a sexually violent predator. Based on that finding, the trial court entered a final judgment and an order of civil commitment, from which Fant-Caughman appeals.

## Issues on Appeal

Fant-Caughman raises four issues on appeal: two concerning the admission of evidence and two concerning the sufficiency of the evidence.

---

[2] The offense entitled lewd act upon a child under California law is substantially similar to the offense of indecency with a child under section 21.11(a)(1) of the Texas Penal Code.

<u>Issue Nos. 1 and 2: Admission of Evidence</u>

During the trial, the State offered into evidence portions of the videotaped deposition of one of Fant-Caughman's victims, "Amy,"[3] in which she described the sexual abuse perpetrated by Fant-Caughman. Amy's deposition testimony was admitted into evidence over Fant-Caughman's objections. Additionally, the trial court admitted into evidence a recording of a phone call Fant-Caughman made to his brother from jail when he was awaiting trial in Amy's case. In the call, Fant-Caughman and his brother discussed whether to give a washer and dryer to Amy's mother. The conversation insinuated that Fant-Caughman sought to influence Amy's mother to help him in his criminal case by providing her with these appliances and that he chose not to give them to her when she would not cooperate. Fant-Caughman's objections to the phone call were overruled.

In his first two issues, Fant-Caughman argues that (1) the trial court abused its discretion by permitting a deposition and jail call recording to be played for the jury for impeachment purposes when the evidence was of little or no consequence to facts at issue, and (2) the deposition and jail call recording were inflammatory and encouraged a decision on an improper basis. The State asserts that Fant-Caughman failed to preserve his arguments that the deposition and phone call were improper impeachment. We will assume, without deciding, that Fant-Caughman's objections at trial were sufficient to preserve his arguments. We will consider his first two issues together.

---

[3] To protect her privacy, we will refer to the victim as Amy. We will use similar pseudonyms to protect the privacy of the other victims addressed in this opinion. *See* TEX. CONST. art. I, § 30(a)(1) (granting victims of crime "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process . . . .").

3

"We review a trial court's evidentiary rulings for abuse of discretion." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). To demonstrate reversible error in the admission of evidence, an appellant must show (1) that the trial court's ruling was erroneous, and (2) that the error was calculated to cause, and probably did cause, the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a); *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 136 (Tex. 2012). In making this determination, we examine the entire case, "considering the evidence as a whole, the strength or weakness of the case, and the verdict." *Waldrip*, 380 S.W.3d at 136. We consider the role that the evidence played in the context of the trial, the efforts made by counsel to emphasize it, and any contrary evidence that it was meant to overcome. *Id.*

Telephone Call Recording

We first consider the admission of the recording of Fant-Caughman's telephone call to his brother. Even if we were to assume that the trial court erred in admitting the call, any error was harmless. In his brief, Fant-Caughman argues that while the call "sounded sleazy," it had no relevance to his status as a sexually violent predator. However, he does not demonstrate how the evidence was harmful, nor does he assert that the judgment turned on the improper admission of the call. Our review of the record shows that the State's counsel introduced the evidence after Fant-Caughman gave vague, non-responsive answers to the State's questions about his attempts to influence Amy's mother in his criminal trial. The State did not put great emphasis on the evidence,

4

but rather presented it concisely before moving on and not mentioning it again. Considering the totality of the evidence, we cannot conclude that the admission of the phone call was calculated to cause and probably did cause the rendition of an improper judgment. Because Fant-Caughman has failed to demonstrate that the phone call probably caused the rendition of an improper judgment, we conclude that its admission, even if erroneous, did not amount to harmful error. *See Krell v. Smith*, No. 02-02-00417-CV, 2003 Tex. App. LEXIS 8091, at *4 (Tex. App.—Fort Worth Sept. 18, 2003, no pet.) (mem. op.) (per curiam).

Amy's Deposition Testimony

We next consider the admission of portions of Amy's deposition testimony. Fant-Caughman asserts that, because he pled guilty to the crimes against Amy, and because the State's expert, Dr. Jason Dunham, discussed the crimes in his testimony, there was no need for the State to introduce the deposition to establish any fact of consequence in the case. The State responds that Amy's testimony was properly admitted because it was relevant, non-cumulative, and contradicted Fant-Caughman's own statements.

At trial, Fant-Caughman was asked how many times he sexually abused Amy. He responded that he could recall "at least eight to a dozen" instances. The specific sexual acts he remembered were "fondling her breast, digitally penetrating her[,] and rubbing her vagina with the vibrator." When asked about other acts, he stated that he could not recall committing them but did not deny that he had. In contrast, Amy testified that Fant-Caughman molested her "[a]t least once every weekend, if not more" for approximately two years. The abuse began when she was ten or eleven years old. She testified that

5

Fant-Caughman touched her "everywhere," including her chest, vagina, and bottom; he touched her with his hands, his mouth, and a vibrator; he penetrated her digitally multiple times; he caused her to use the vibrator on herself while he watched; he caused her to touch his penis; he watched her bathe and washed her himself; and he intentionally exposed his penis to her.

We disagree with Fant-Caughman's claim that Amy's testimony "was of little or no consequence to facts at issue." The testimony presented by Fant-Caughman and Dr. Dunham did not have the same probative value as Amy's testimony. Fant-Caughman was convicted of two offenses against Amy, both of which occurred on or about March 20, 1999. He admitted to committing no more than a dozen. He stated that he could not recall many details of the abuse. His description of events was vague and tended to minimize the extent of his actions. And while the jury heard testimony from Dr. Dunham that the records he reviewed indicated that Amy estimated she had been abused "about 100 times over two years," Fant-Caughman sought and obtained a limiting instruction regarding this testimony. The trial court admonished the jury that hearsay information contained in the records reviewed by the expert was admitted only to show the basis for the expert's opinion and could not be considered as evidence to prove the truth of the matters asserted. *See, e.g., In re Commitment of Lucero*, No. 09-14-00157-CV, 2015 Tex. App. LEXIS 1098, at *16 (Tex. App.—Beaumont Feb. 5, 2015, pet. denied) (mem. op.) (where trial court gave jury limiting instruction relating to its consideration of testimony, appellate court presumes that jury followed the court's instruction). Consequently, the only testimony regarding the nature and full extent of Fant-Caughman's conduct came from Amy herself.

6

Moreover, Dr. Dunham, who evaluated Fant-Caughman, testified that the length of time that Fant-Caughman offended against Amy and the number of instances was "a huge deal." He explained that in making his evaluation, it was important to know whether Fant-Caughman was a one-time or short-term offender versus a multiple-instance offender. Dr. Dunham noted that Amy's estimation of approximately 100 instances of abuse, occurring on a weekly basis over a two-year period, indicated that the abuse was "normalized behavior" for Fant-Caughman. This "reinforced" sexual deviancy and sexual deviant behavior was, in Dr. Dunham's opinion, a risk factor for reoffending.

Thus, the trial court could have reasonably determined that Amy's testimony was relevant to the issue of Fant-Caughman's past behavior. *See In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied) (it is jury's responsibility to resolve conflicts and contradictions in testimony, weigh evidence, and draw reasonable inferences from basic facts to ultimate facts).

Finally, while we recognize that Amy's testimony was emotional, we cannot conclude that the emotion resulted in unfair prejudice such that it would prompt the jury to decide the case on an improper basis. Indeed, the evidence is distressing for the very reason it is probative, because it indicates that Fant-Caughman regularly engaged in harmful, deviant behavior. The trial court could have reasonably concluded that the probative value of the evidence outweighed any danger of unfair prejudice. *See Diamond Offshore Servs. v. Williams*, 542 S.W.3d 539, 548-49 (Tex. 2018). Therefore, we overrule Fant-Caughman's first two issues. *See State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009) (court will not reverse judgment based on admission of

evidence unless appellant establishes that trial court's ruling was erroneous, and that error probably did cause rendition of improper judgment).

Issue Nos. 3 and 4:  Sufficiency of Evidence

In his remaining two issues, Fant-Caughman asserts that the evidence was (1) legally insufficient and (2) factually insufficient to support the jury's finding that he is a sexually violent predator.

For purposes of the civil commitment statute, a sexually violent predator is "a repeat sexually violent offender [who] suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence."  *In re Bohannon*, 388 S.W.3d 296, 298 (Tex. 2012) (quoting TEX. HEALTH & SAFETY CODE ANN. § 841.003(a) (West 2017)).  A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person."  TEX. HEALTH & SAFETY CODE ANN. § 841.002(2).  The State must prove beyond a reasonable doubt that the person it seeks to civilly commit is a sexually violent predator.  *Id.* § 841.062 (West 2017).

In a legal sufficiency review in cases brought for the civil commitment of a sexually violent predator, we review the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could form a firm belief or conviction that the finding was true.  *In re Commitment of Stoddard*, 619 S.W.3d 665, 674 (Tex. 2020).  We must "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so" and "disregard all evidence that a reasonable factfinder

could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We may not disregard undisputed facts that do not support the finding. *Id.*

In a factual sufficiency review, we determine whether, in light of the entire record, a reasonable factfinder could find beyond a reasonable doubt that the defendant is a sexually violent predator. *In re Commitment of Stoddard*, 619 S.W.3d at 674. In a sexually violent predator case, "the evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the SVP finding, along with the undisputed facts that do not support the finding, is so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met." *Id.* at 674-75.

In this case, the evidence was undisputed that Fant-Caughman has been convicted of more than one sexually violent offense and had a sentence imposed for at least one of those offenses. Thus, he meets the statutory definition of a repeat sexually violent offender. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003(b). Fant-Caughman contests only the sufficiency of the evidence to prove he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. In particular, Fant-Caughman challenges the testimony of Dr. Dunham, who opined at trial that Fant-Caughman suffers from a behavioral abnormality that makes him likely to reoffend. Fant-Caughman argues that Dr. Dunham's testimony was "misleading, conclusory, and speculative[,]" and that without it, no rational factfinder could have found, beyond a reasonable doubt, the elements required for civil commitment.

9

Opinion testimony that is wholly conclusory or speculative amounts to no evidence "because it does not tend to make the existence of a material fact 'more probable or less probable.'" *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) (quoting *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004)). Accordingly, "[b]are, baseless opinions will not support a judgment even if there is no objection to their admission in evidence." *Id.*

The record reflects that Fant-Caughman did not object to the reliability of Dr. Dunham's opinion at trial; therefore, he must demonstrate on appeal that the evidence offers no basis to support Dr. Dunham's opinions to prevail on his legal sufficiency claim. *Id.* at 817.

The evidence admitted at trial does not support Fant-Caughman's contention that Dr. Dunham's opinions are without any supporting basis. The record shows that Dr. Dunham is a licensed psychologist experienced in criminal forensic psychology. At the time of trial, he had conducted more than 300 behavioral abnormality and mental abnormality evaluations. Dr. Dunham testified that for this case, he reviewed Fant-Caughman's records, including police reports, court documents, victim and witness statements, prison records, sex offender treatment records and evaluations, a multidisciplinary treatment team report, and more. He testified that the records he reviewed are the type of records on which experts in his field generally rely in forming opinions. Dr. Dunham also completed an in-person evaluation of Fant-Caughman. He testified that his assessment was done in accordance with his training as a psychologist and in accordance with the accepted standards in the field of forensic psychology.

10

As part of his evaluation, Dr. Dunham used both the Static-99R test, which is a risk assessment tool, and the PCLR test, which measures an individual's level of psychopathy. Dr. Dunham testified that Fant-Caughman had a low score on the PCLR, indicating a low level of psychopathy, and that Fant-Caughman's score on the Static-99R indicated an average risk of reoffending. Dr. Dunham agreed with the PCLR result, testifying, "I don't think he's a psychopath." However, he opined that Fant-Caughman is at a moderate high or high risk to reoffend, not an average risk as indicated by the Static-99R. He based his opinion on risk factors that are not accounted for on the Static-99R, such as the high number of instances of abuse, the existence of multiple victims,[4] Fant-Caughman's lack of understanding his own risk, and his denial of being sexually aroused to children.

Fant-Caughman contends that Dr. Dunham's minimal reliance on the test results indicates a lack of scientific support for his expert opinion. We disagree. First, Dr. Dunham testified that neither test is determinative as to whether someone has a behavioral abnormality, and no evidence was presented to controvert that statement. Moreover, Dr. Dunham explained the basis for his opinion that Fant-Caughman suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence, and the record provides support for that opinion. Based on his review of the records and his interview with Fant-Caughman, Dr. Dunham diagnosed Fant-Caughman with unspecified paraphilic disorder, indicating a lifelong sexual deviancy. Among other things, Dr. Dunham testified that Fant-Caughman displayed a lack of remorse,

---

[4] In addition to Amy and the adjudicated victim in California, Fant-Caughman admitted to multiple sexual offenses against another child, "Tim," when Tim was 12 or 13 and Fant-Caughman was 18 or 19.

11

minimization of his offenses, victim-blaming, and persistence after punishment, i.e., reoffending even after being detected and punished, all of which are significant in determining whether someone has a behavioral abnormality. Dr. Dunham's opinion cannot be characterized as wholly conclusory or lacking foundation.

Reviewing the evidence in the light most favorable to the jury's finding, we conclude that the evidence admitted is legally sufficient to support the jury's finding that Fant-Caughman is a sexually violent predator.

We further conclude that the evidence is factually sufficient to support the jury's verdict. As set out above, the jury heard Dr. Dunham's diagnosis of Fant-Caughman and his explanation for his opinion that Fant-Caughman has a behavioral abnormality. Dr. Dunham was vigorously cross-examined by Fant-Caughman's counsel regarding his opinions. The jury also heard from Fant-Caughman himself; he testified that he was not sexually attracted to children, he felt remorse for his victims, he was making progress in a sex offender treatment program, he had a good support system and accountability partners in place for life outside prison, and he was not a sexually violent predator. The jury was charged with resolving the conflicts in the testimony and making any credibility determinations. In light of the entire record, we conclude "the disputed evidence a reasonable factfinder could not have credited in favor of the verdict, along with undisputed facts contrary to the verdict," is not "so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met." *In re Commitment of Stoddard*, 619 S.W.3d at 678.

Having concluded that the evidence is legally and factually sufficient to support the jury's verdict, we overrule issues three and four.

Conclusion

We have overruled all four of Fant-Caughman's issues on appeal; accordingly, we affirm the judgment of the trial court.


Judy C. Parker
Justice